# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LUIS ANGEL ALVAREZ ROMAN , 5903 Midnight Lane, Galloway, OH 43119, | CIVIL ACTION NO. 1:23-cv-02348 |
| Plaintiff, | |
| | JUDGE Patricia A. Gaughan |
| v. | |
| | MAGISTRATE JUDGE Jonathan D. Greenburg |
| CITY OF LORAIN, OHIO, c/o Jack W. Bradley, Mayor, 200 W. Erie Ave. #714, Lorain, OH 44052, | |
| and | |
| JAMES P. MCCANN, in both his individual, for purposes of injunctive relief, and official capacities as Chief of City of Lorain Police Department, 200 W. Erie Ave., Lorain, OH 44052, | |
| and | |
| LORAIN COUNTY, OHIO, c/o David J. Moore, President. Lorain County Commissioners, 226 Middle Ave., Elyria, OH 44035, | |
| and | |
| PHIL R. STAMMITTI, in both his individual, for purposes of injunctive relief, and official capacities as Sheriff of Lorain County, 9896 Murray Ridge Rd., Elyria, OH 44035, | |
| and | |

| | |
|---|---|
| MARCUS RIVERA, in his individual capacity, c/o City of Lorain Police Department, 200 W. Erie Ave., Lorain, OH 44052, | : : : : : : : |
| and | : : |
| CHRISTOPHER COLON, in his individual capacity, c/o City of Lorain Police Department, 200 W. Erie Ave., Lorain, OH 44052, | : : : : : : : |
| and | : : |
| JACOB BELL, in his individual capacity, c/o Lorain County Sheriff's Office, 9896 Murray Ridge Rd., Elyria, OH 44035, | : : : : : : |
| and | : : |
| DARNELL BOARD, in his individual capacity c/o Lorain County Sheriff's Office, 9896 Murray Ridge Rd., Elyria, OH 44035, | : : : : : : |
| and | : : |
| WILLIAM NEWBURY, in his individual capacity, c/o Lorain County Sheriff's Office, 9896 Murray Ridge Rd., Elyria, OH 44035, | : : : : : |
| and | : : |
| AMON WILLIS, in his individual capacity, c/o Lorain County Sheriff's Office, 9896 Murray Ridge Rd., Elyria, OH 44035, | : : : : : : |
| and | : : |
| SCOTT ZIMMERMAN, in his individual capacity, c/o Lorain County Sheriff's Office, | : : |

2

| | |
|---|---|
| 9896 Murray Ridge Rd., | : |
| Elyria, OH 44035, | : |
| | : |
| and | : |
| | : |
| STEPHANIE SUTER, in her individual | : |
| capacity, c/o Lorain County Sheriff's Office, | : |
| 9896 Murray Ridge Rd., | : |
| Elyria, OH 44035, | : |
| | : |
| Defendants. | :   **Jury Demand Endorsed Hereon** |

## SECOND AMENDED COMPLAINT

**I.   Preliminary Statement**

1. This action seeks compensatory and punitive damages; declaratory, injunctive, and equitable relief; and attorneys' fees and costs for the violations of the Fourth and Fourteenth Amendments to the United States Constitution and the interference with Plaintiff's civil rights committed when, acting pursuant to the policies, practices, and customs of Defendants City of Lorain and Lorain County, (a) Defendants City of Lorain, through its Police Department, and Patrol Officers Rivera and Colon falsely arrested and maliciously prosecuted Plaintiff recklessly misidentifying him as a suspect who did not even look like or share the same last name as the suspect though both were of Hispanic origin; and (b) at the behest of Defendants Lorain Police Department and Patrol Officers Rivera and Colon, Defendants Lorain County, through its Sheriff's Office, its on-site jail counselor, Stephanie Suter, and its Corrections Officers Bell (now-Sergeant), Board, Newbury, Willis, and Zimmerman, kept him wrongly incarcerated for nine days, plus an additional six days of GPS ankle monitoring, without investigating that misidentification despite his protestations of misidentification and readily available information establishing his misidentification.

**II.   Jurisdiction and Venue**

3

2. Plaintiff brings his constitutional claims under the Reconstruction Civil Rights Act, 42 U.S.C. § 1983, and his interference claim under R.C. 2921.45 with civil damages as provided by R.C. 2307.60(A)(1).

3. This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

4. Compensatory and, against Defendants sued in their individual capacities, punitive damages may be awarded under 42 U.S.C. § 1983 and the common law of the State of Ohio.

5. Declaratory, injunctive, and equitable relief are sought pursuant to 28 U.S.C. §§ 2201; 2202; 42 U.S.C. § 1983; and Fed. R. Civ. P. 65.

6. Costs and attorneys' fees may be awarded pursuant to Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and the common law of the State of Ohio.

7. Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and LR 3.8 because the claims arose in Lorain County, Ohio, where all Defendants engage in law enforcement activities and Plaintiff was detained.

### III. Parties

8. Plaintiff Luis Angel Alverez Roman is a citizen of the United States, was gainfully employed under the name of Luis A. Alvarez Roman before his false arrest and malicious prosecution; at all times material to this action resided under that name at 5903 Midnight Lane in Galloway, Ohio, more than 135 miles away from Lorain; and had absolutely nothing whatsoever to do with the disrupting of public services, assault, aggravated burglary, and rape that had allegedly been committed by a man named Luis Alverez and his family members on October 10, 2022, when they broke into the home of Luis Alverez's ex-fiancé, C.F., in Lorain, Ohio, assaulted

4

and threatened C.F. and her adult daughter, sexually assaulted C.F., and stole a phone that had been in the residence.

9. Defendant City of Lorain, Ohio, is the governmental entity responsible for the acts and omissions of its agencies, which include the Lorain Police Department (LPD), and has promulgated or enabled policies, practices, and customs for the LPD and/or delegated to Defendant Chief of Police McCann the power to make LPD policies, practices, and customs that empowered Patrol Officers to (a) secure the arrest and incarceration of an individual based solely on the similarity of his name to a suspect and their sharing of a nationality, without bothering to compare and contrast his appearance, age, residential address, employment, family history, and/or other characteristics with that of the suspect, despite complaining witnesses being intimately familiar with such information about the suspect; and/or (b) to compound the absence of probable cause to believe that individual had committed a crime by proceeding to maliciously prosecute him, misrepresenting to jail authorities and prosecutors that the individual was the suspect identified by the complaining witnesses.

10. Defendant James P. McCann was, at all times material to this action, Chief of the City of Lorain Police Department; is being sued in both his individual, for purposes of injunctive relief, and official capacities; at all times material to this action, acted under color of state law; and was a final policymaker for the City of Lorain regarding its Police Department, adopting, implementing, and/or ratifying policies, practices, and customs that empowered Patrol Officers to (a) secure the arrest and incarceration of an individual based solely on the similarity of his name to a suspect and their sharing of a nationality, without bothering to compare and contrast his appearance, age, residential address, employment, family history, automobile, and/or other characteristics with that of the suspect, despite complaining witnesses being intimately familiar

5

with such information about the suspect; and/or (b) to compound the absence of probable cause to believe that individual had committed a crime by proceeding to maliciously prosecute him, misrepresenting to jail authorities and prosecutors that the individual was the suspect identified by the complaining witnesses.

11. Defendant Lorain County, Ohio is the governmental entity responsible for the acts and omissions of its agencies, which include the Lorain County Sheriff's Office, and has promulgated or enabled policies, practices, and customs for the jail and/or delegated to Defendant Sheriff Phil R. Stammitti the power to make jail policies, practices, and customs that empowered deputies and corrections officers to ignore and/or fail to take reasonable steps in response to efforts by prisoners to prevent their unjust imprisonment and deprivation of liberty.

12. Defendant Sheriff Phil R. Stammitti was, at all times material to this action, Sheriff of Lorain County; is being sued in both his individual, for purposes of injunctive relief, and official capacities; at all times material to this action, acted under color of state law; and was a final policymaker for the Lorain County Jail adopting, implementing, and/or ratifying policies, practices, and customs that empowered jail employees to ignore and/or fail to take reasonable steps in response to efforts by prisoners to prevent unjust imprisonment and deprivation of liberty.

13. Defendant Marcus Rivera was, at all times material to this action, a Patrol Officer of the City of Lorain Police Department acting under color of law; is being sued in his individual capacity; was required to comply with LPD policies, practices, and customs, as dictated by the City of Lorain and/or Chief McCann, and (a) secured the arrest and incarceration of Plaintiff based solely on the similarity of his name to a suspect and their shared nationality, without bothering to compare and contrast his appearance, age, residential address, employment, family history, automobile, and/or other characteristics with that of the suspect, despite complaining witnesses

6

being intimately familiar with such information about the suspect; (b) compounded the absence of probable cause to believe that Plaintiff had committed a crime by proceeding to maliciously prosecute him, misrepresenting to jail authorities and prosecutors that Plaintiff was the suspect identified by the complaining witnesses; and/or (c) in doing so, contributed to Plaintiff's detention by failing to take readily available steps to determine whether Plaintiff's protestations of his innocence and mistaken identification merited his release from incarceration.

14. Defendant Christopher Colon was, at all times material to this action, a Patrol Officer of the City of Lorain Police Department acting under color of law; is being sued in his individual capacity; was required to comply with LPD policies, practices, and customs, as dictated by the City of Lorain and/or Chief McCann, and (a) secured the arrest and incarceration of Plaintiff based solely on the similarity of his name to a suspect and their shared nationality, without bothering to compare and contrast his appearance, age, residential addresses, employment, family history, and/or readily available other characteristics with that of the suspect, despite complaining witnesses being intimately familiar with such information about the suspect; (b) compounded the absence of probable cause to believe that Plaintiff had committed a crime by proceeding to maliciously prosecute him, misrepresenting to jail authorities and prosecutors that Plaintiff was the suspect identified by the complaining witnesses; and/or (c) in doing so, contributed to Plaintiff's detention by failing to take readily available steps to determine whether Plaintiff's protestations of his innocence and mistaken identification merited his release from incarceration.

15. Defendant Jacob Bell was, at all times material to this action, employed in the Corrections Division of the Lorain County Sheriff's Office when Plaintiff communicated with him about his innocence, being misidentified as a suspect, and deserving to be released from incarceration in the Lorain County Jail; had the responsibility to respond to efforts by prisoners to

7

prevent unjust imprisonment and deprivation of liberty and to comply with jail policies, practices, and customs, as dictated by the County of Lorain and/or Sheriff Stammitti regarding that responsibility; is being sued in his individual capacity; and, at all times material to this action, acted under color of state law.

16. Defendant Darnell Board was, at all times material to this action, employed in the Corrections Division of the Lorain County Sheriff's Office when Plaintiff communicated with him about his innocence, being misidentified as a suspect, and deserving to be released from incarceration in the Lorain County Jail; had the responsibility to respond to efforts by prisoners to prevent unjust imprisonment and deprivation of liberty and to comply with jail policies, practices, and customs, as dictated by the County of Lorain and/or Sheriff Stammitti regarding that responsibility; is being sued in his individual capacity; and, at all times material to this action, acted under color of state law.

17. Defendant William Newbury was, at all times material to this action, employed in the Corrections Division of the Lorain County Sheriff's Office when Plaintiff communicated with him about his innocence, being misidentified as a suspect, and deserving to be released from incarceration in the Lorain County Jail; had the responsibility to respond to efforts by prisoners to prevent unjust imprisonment and deprivation of liberty and to comply with jail policies, practices, and customs, as dictated by the County of Lorain and/or Sheriff Stammitti regarding that responsibility; is being sued in his individual capacity; and, at all times material to this action, acted under color of state law.

18. Defendant Amon Willis was, at all times material to this action, employed in the Corrections Division of the Lorain County Sheriff's Office when Plaintiff communicated with him about his innocence, being misidentified as a suspect, and deserving to be released from

incarceration in the Lorain County Jail; had the responsibility to respond to efforts by prisoners to prevent unjust imprisonment and deprivation of liberty and to comply with jail policies, practices, and customs, as dictated by the County of Lorain and/or Sheriff Stammitti regarding that responsibility; is being sued in his individual capacity; and, at all times material to this action, acted under color of state law.

19. Defendant Scott Zimmerrman was, at all times material to this action, employed in the Corrections Division of the Lorain County Sheriff's Office when Plaintiff communicated with him about his innocence, being misidentified as a suspect, and deserving to be released from incarceration in the Lorain County Jail; had the responsibility to respond to efforts by prisoners to prevent unjust imprisonment and deprivation of liberty and to comply with jail policies, practices, and customs, as dictated by the County of Lorain and/or Sheriff Stammitti regarding that responsibility; is being sued in his individual capacity; and, at all times material to this action, acted under color of state law.

20. Defendant Stephanie Suter was, at all times material to this action, a counselor employed in the Corrections Division of the Lorain County Sheriff's Office when Plaintiff communicated with her about his innocence, being misidentified as a suspect, and deserving to be released from incarceration in the Lorain County Jail; had the responsibility to respond to efforts by prisoners to prevent unjust imprisonment and deprivation of liberty and to comply with jail policies, practices, and customs, as dictated by the County of Lorain and/or Sheriff Stammitti regarding that responsibility; is being sued in her individual capacity; and, at all times material to this action, acted under color of state law.

**IV.    Facts**

21. On October 10, 2022, an individual named Luis Alvarez and several of his family members allegedly broke into the home of his ex-fiancé C.F. in Lorain, Ohio, assaulted and threatened C.F. and her adult daughter, sexually assaulted C.F., and stole a cellphone that had been in the residence.

22. Defendant Rivera responded to a domestic violence complaint at C.F.'s residence and confirmed that the door had been kicked in.

23. The complaining witnesses were very familiar with Luis Alverez as he and CF moved from Florida to Youngstown approximately two months earlier.

24. In Youngstown, the relationship between Luis Alverez deteriorated, and C.F. left him, moving herself and her family to Lorain.

25. Defendant Rivera ran a records check on Luis Alvarez for prior domestic violence convictions, and the check was negative.

26. On October 10, 2022, Defendant Rivera filed charges against Plaintiff in Lorain Municipal Court alleging disruption of public services, assault, and aggravated burglary.

27. Defendant Rivera also filed charges against the other individuals that C.F. identified as being involved in breaking into the house.

28. The charges in Lorain were assigned the case numbers 2022 CRB 05374 and 2022 CRA 04374.

29. Defendant Rivera named Plaintiff as the Defendant in those criminal charges.

30. Plaintiff was not the Luis Alvarez who allegedly committed those charges.

31. The Complaining Witnesses knew that Plaintiff was not that Luis Alvarez.

32. Plaintiff went by the name, Luis A. Alvarez Roman; this is the name on his driver's license, utility bills, bank account, and paycheck.

33. Plaintiff resided at 5903 Midnight Lane in Galloway, Ohio, more than 135 miles away from Lorain.

34. Plaintiff had no connection whatsoever to C.F. or her adult daughter.

35. Plaintiff had no connection whatsoever to Lorain, Youngstown, or Florida.

36. In his report, Defendant Rivera stated that Luis Alvarez recently moved to Youngstown from Florida.

37. Defendant Rivera listed Youngstown addresses for the family of Luis Alvarez who allegedly participated in the crimes.

38. Plaintiff had no connection whatsoever with the Luis Alvarez or his family who allegedly participated in the crimes.

39. Defendant Rivera did not indicate any connection between the suspect identified by the complaining witnesses and Galloway.

40. In Galloway, Plaintiff lived with his mother and nephews, residing at that address for two years and before then in Chicago for five years.

41. Plaintiff's family is not related in any way, apart from being Hispanic, to the Luis Alvarez and his family who allegedly participated in the crimes.

42. On October 11, 2022, Defendant Colon conducted a follow-up investigation, interviewed witnesses, and concluded that a rape charge against Luis Alverez should be filed.

43. Defendant Colon recommended to the Lorain County Municipal Prosecutor that the rape charge be brought and continued to identify Plaintiff as the Luis Alverez who allegedly committed crimes.

44. On October 12, 2022, Defendant Colon added a charge of rape to the pending charges against Plaintiff.

11

45. During his interview with C.F.'s daughter, Defendant Colon learned that the suspects had left the scene of the crimes in a white 2007 Mazda.

46. Plaintiff drives a black Honda Civic and has never owned, driven, or been a passenger in a 2007 Mazda.

47. During his interview with C.F.'s daughter, Defendant Colon learned that the Luis Alvarez who allegedly committed the crimes lived at 1040 Kendis Cir. Apt. C, Youngstown, OH 44505.

48. Plaintiff has never lived at nor visited 1040 Kendis Cir. Apt. C, Youngstown, OH 44505.

49. On October 13, 2022, Lorain County issued a warrant for Plaintiff's arrest for three first degree felonies and one fourth degree felony and used Plaintiff's Galloway address.

50. On December 13, 2022, Plaintiff was arrested by Franklin County Sheriff's Deputies at his home in Galloway and taken to the Franklin County Jail.

51. Two days later, on December 15, 2022, Plaintiff was picked up from the Franklin County Jail and transported to the Lorain County Jail.

52. On December 16, 2022, Plaintiff was committed pending examination and held with no bond.

53. Plaintiff retained attorney Billy Husher, Jr. and paid him $2,000.00 to represent him.

54. On December 19, 2022, Plaintiff was again committed pending examination with a cash or surety bond of $50,000.00, which he did not have the ability to pay.

55. Plaintiff then retained attorney Mike Doyle and paid him $5,000.00 to represent him.

56. Three days later, on December 22, 2022, Plaintiff was arraigned, pled not guilty, and was given a reduced cash or surety bond in the amount of $25,000.00.

57. On the same date, Plaintiff was able to post a surety bond in the amount of $25,000.00 through T-Bonds in Lorain, at a cost to him of $2,500.00.

58. Plaintiff was released from the Lorain County jail and required to wear a GPS ankle monitor for an additional six days.

59. At no point during Plaintiff's nine days of incarceration did anyone with the City of Lorain Police Department make any effort to confirm that he was the individual who assaulted C.F. or ascertain why they arrested someone with a different last name from that suspect.

60. Throughout this ordeal, although Plaintiff primarily spoke Spanish, effectively communicated to any Lorain County jail employee he encountered – specifically including Defendant Corrections Officers Bell, Board, Newbury, Willis, Zimmerman, and Jail Counselor Suter – on repeated occasions that he was totally innocent and must have been misidentified.

61. Despite the language barrier, Plaintiff was able to successfully communicate to the Defendant jail employees that he was totally innocent and must have been misidentified.

62. Specifically, Plaintiff told Defendant Willis as he was being booked into the Lorain County jail on December 15, 2022 that he was the victim of mistaken identity, that the individual that should have been arrested was named "Luis Alvarez," not "Luis Alvarez Roman," and that he lived in Galloway, Ohio and had never been in Lorain County prior to his arrest.

63. However, Defendant Willis did not take any actions to confirm his identity at that time and simply booked him into the jail anyways using his name, "Luis Roman."

64. Plaintiff was then assigned to the jail's "special needs pod" and spoke with Defendant Jail Counselor Suter, where he again explained he had been misidentified.

65. Regarding this encounter, Defendant Suter noted that, although Plaintiff primarily spoke Spanish, he "was able to communicate effectively" and that Plaintiff "asked appropriate questions" about his pending court proceedings, asked if a translator would be provided by the court, reported that "he lives in the Columbus area," that he had never been arrested before, and that "he had no idea about his charges."

66. While in the special needs pod, Plaintiff continued to tell jail staff that he was mistakenly identified as someone else who was named "Luis Alvarez" and related reasons for his innocence and misidentification at any opportunity that came up for him to do so.

67. On or around December 16, 2022, Plaintiff encountered Defendant Bell and explained to him that he was misidentified by the arresting officers, that he lived in the Columbus area, had never been to Lorain County or arrested previously, and that he was not the individual named "Luis Alvarez" the officers intended to arrest.

68. Plaintiff explained how he had been misidentified and the circumstances supporting his claim to Defendant Bell on multiple occasions, having encountered him again over the next few days.

69. Plaintiff even told night shift officers, including Defendant Zimmerman, in the special needs pod the same thing, alerting them that he had been mistaken for someone he was not, that he lived in the Columbus area, that he had never been to Lorain County or arrested previously, and that he was not the individual named "Luis Alvarez" the officers intended to arrest.

70. While housed in the special needs pod, over the next few days, Plaintiff repeatedly explained that he was the victim of mistaken identity and the reasons for the same to several jail employees, including Defendants Bell, Board, Newbury, Willis, Zimmerman, and Suter.

14

71. Plaintiff relentlessly reported to jail staff that he had been misidentified and the circumstances involved, including telling Defendant Suter again on December 19, 2022, as reflected in her counseling notes, "that this [was] a case of mistaken identity[,]" and that "he has never even been to this area and [did] not know that lady who the TPO is against[.]"

72. On more than one occasion, Plaintiff explained the same misidentification issue and supporting reasons to Defendant Board, who transported him to and from court proceedings while he was in the jail.

73. Defendants Bell, Board, Newbury, Willis, Zimmerman, and Suter all understood Plaintiff's claim of mistaken identity when he explained the circumstances to them but took no action to report, investigate, verify, or otherwise correct the issue.

74. Despite Plaintiff's repeated protestations of innocence due to mistaken identity, none of the Defendants or other jail staff members investigated his concerns, even though they had the ability to do so using non-burdensome means, such as calling dispatch for LEADS information, contacting the arresting agency for identifying information, searching the court's website, and/or other means of verifying his identity, including those listed in the jail's policy on confirming an inmate's identity.

75. Within a couple days after Plaintiff's bond was posted, Attorney Doyle called Defendant Colon and left a voicemail explaining that Plaintiff was not the right suspect, had never been in a relationship with C.F., and had never lived in Youngstown, Ohio.

76. After receiving the voicemail, Defendant Colon traveled to C.F.'s home in the hope of speaking to her but was only able to talk with C.F.'s daughter, Analisha Tineo.

77. Ms. Tineo told Defendant Colon that C.F. had moved back to Florida and that she knew Luis Alvarez.

15

78. Defendant Colon then showed Ms. Tineo a picture of Plaintiff and asked if it was Luis Alvarez.

79. Ms. Tineo said that it was not him and showed Defendant Colon a picture of the Luis Alvarez who allegedly committed the crimes.

80. Defendant Colon then realized that Plaintiff and Mr. Alvarez were two separate people.

81. Defendant Colon returned to the LPD and began the process of dismissing the charges against Plaintiff, and, on December 29, 2022, those charges were dismissed with prejudice at the request of the prosecutor.

82. Before December 28, 2022, Defendants did not compare or contrast a photograph of the Luis Alvarez who allegedly committed the crimes with one of Plaintiff, nor did they attempt to ascertain or reconcile readily available identifying characteristics of that perpetrator's age, height, weight, tattoos, aliases, driver's license, automobile registration, residential addresses, employment, and past criminal records.

83. The LPD and Defendants Rivera and Colon lacked probable cause to believe that Plaintiff committed the crimes for which he was arrested, prosecuted, and incarcerated pending trial, and they recklessly misidentified him to secure his arrest, prosecution, and incarceration pending trial.

84. The Sheriff's Office and Defendants Bell, Board, Newbury, Willis, Zimmerman, and Suter failed to take readily available steps to determine whether Plaintiff's repeated protestations of his innocence and mistaken identification merited his release from incarceration, and Defendants LPD and Rivera and Colon contributed to Plaintiff's detention by failing to take

readily available steps to determine whether Plaintiff's protestations of his innocence and mistaken identification merited his release from incarceration.

85. The false arrest, malicious prosecution, and improper detention of Plaintiff caused him loss of income, emotional distress; anguish; frustration; humiliation; and related injuries.

86. Defendants acted in conscious disregard of Plaintiff's constitutional and civil rights in a way that was highly probable to cause – and did cause – him substantial harm.

## V. Claims for Relief

### A. First Count: False Arrest

87. Paragraphs 1 through 86 are realleged and incorporated herein.

88. By recklessly misidentifying Plaintiff and securing his arrest without probable cause, Defendants LPD, Rivera, and Colon have committed false arrest.

89. The policies, practices, and customs, as dictated by the City of Lorain and/or Chief McCann, were the moving force behind Defendants Rivera and Colon securing the false arrest and incarceration of Plaintiff based solely on the similarity of his name to a suspect, without bothering to compare and contrast his appearance, age, residential address, employment, family history, automobile, and/or other characteristics with that of the suspect, despite complaining witnesses being intimately familiar with such information about the suspect and the absence of probable cause that Plaintiff had committed the crimes charges.

### B. Second Count: Malicious Prosecution

90. Paragraphs 1 through 89 are realleged and incorporated herein.

91. By recklessly initiating a prosecution for which probable cause was so lacking that it was ultimately dismissed on the basis of mistaken identity, Defendants LPD, Rivera, and Colon have committed malicious prosecution.

92. The policies, practices, and customs, as dictated by the City of Lorain and/or Chief McCann, were the moving force behind Defendants Rivera and Colon maliciously prosecuting Plaintiff by compounding the absence of probable cause to believe that Plaintiff committed a crime with misrepresenting to jail authorities and prosecutors that Plaintiff was the suspect identified by the complaining witnesses.

  **C.** **Third Count: Violation of Due Process**

93. Paragraphs 1 through 92 are realleged and incorporated herein.

94. By failing to take readily available steps to determine whether Plaintiff's protestations of his innocence and mistaken identification merited his release from incarceration, Defendants detained Plaintiff longer than was constitutionally permissible.

95. The policies, practices, and customs, as dictated by Lorain County, Sheriff Stammitti, the City of Lorain, and/or Chief McCann, were the moving force behind Defendants failing to take readily available steps to determine whether Plaintiff's protestations of his innocence and mistaken identification merited his release from incarceration and instead detailing Plaintiff longer than was constitutionally permissible.

  **D.** **Fourth Count: Civil Liability for Criminal Conduct**

96. Paragraphs 1 through 95 are realleged and incorporated herein.

97. By knowingly depriving, conspiring, or attempting to deprive Plaintiff of his constitutional rights in violation of R.C. 2921.45, Defendants are liable for damages under R.C. 2307.60(A)(1).

**VI.** **Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court:

a. declare that Defendants, jointly or severally, have violated his constitutional rights and are civilly liable for their criminal acts;

b. order such injunctive and equitable relief as will make Plaintiff whole and prevent deprivation of other suspect's rights;

c. award compensatory and punitive damages in excess of $75,000;

d. allow a reasonable attorneys' fee and costs; and

e. grant such other relief as the Court may deem appropriate.

Respectfully submitted,

By: /s/ *Madeline J. Rettig*
Madeline J. Rettig (0098816)
(mrettig@marshallforman.com)
Edward R. Forman (0076651)
(eforman@marshallforman.com)
John S. Marshall (0015160)
(jmarshall@marshallforman.com)
Samuel M. Schlein (0092194)
(sschlein@marshallforman.com)
Helen M. Robinson (0097070)
(hrobinson@marshallforman.com)
MARSHALL FORMAN & SCHLEIN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C Oakland, CA 94612
(614) 203-1255
Fax (614) 463-9780

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

By: /s/ *Madeline J. Rettig*
Madeline J. Rettig (0098816)

19

## CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing Second Amended Complaint was originally filed with the Court on this 28th day of August, 2024 (relating back to the originally filed copy with Plaintiff's since-granted Motion for Leave to Amend on August 14, 2024) using the CM/ECF system, which will send notification of such filing to all counsel of record. Parties may access this filing through the Court's filing system.

By: <i>/s/ Madeline J. Rettig</i><br>Madeline J. Rettig (0098816)